OWEN A. FRANK ET AL., APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.
127 N. W. 2d 300

Filed April 3, 1964.   No. 35619.

Wright, Simmons & Hancock, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Warren D. Lichty, Jr., for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

This a State highway condemnation case. From a jury verdict and judgment for the plaintiffs in the sum of $12,280, the plaintiffs appeal. The jury made special findings in this case; first, that the value of the property taken by the State was $12,280; and, second, that there was no damage to the remainder of the plaintiff's property. The plaintiffs assign error in the inadequacy of the verdict in that there was no allowance for damage to the remainder of their property, error in the admission of the testimony of the witness Zich for the State, error in an instruction, and error in permitting the State

to introduce evidence as to the value of the whole of plaintiffs' property when the plaintiffs themselves limited their claim for remainder damage to only a portion of it.

The land condemned was for the purpose of constructing a portion of a by-pass of State Highway No. 26 on the north side of Scottsbluff, Nebraska. The date of the taking was September 12, 1962. Plaintiffs own approximately 124 acres of land in an area which is gradually being developed for residential purposes. It is one continuous piece of property being bordered by Twenty-seventh Street, a paved arterial, on the north, Twentieth Street on the south, Fifth Avenue on the west, and a drainage ditch on the east which runs directly north in a straight line on the east border for a short distance and then extends diagonally in a southeast-northwest direction to a point where it' intersects Twenty-seventh Street, the north boundary of the property. The actual taking by the State is 6.14 acres in a strip approximately 150 feet wide which runs parallel with and immediately next to the diagonal portion of the drainage ditch bordering plaintiffs' property on the east. The evidence shows that the plaintiffs had sold tracts from the west side of this property bordering Fifth Avenue for a Safeway store, for a school and church, and for small residential tracts. The balance of the property was devoted to farm purposes at the time of the taking, was unplatted, and was zoned by the City of Scottsbluff for residential, single-family dwelling purposes. The evidence shows that the whole surrounding area was gradually being developed for urban residential and incidental commercial purposes with comparatively new subdivisions and sales of property therein to the north, west, and east of the plaintiffs' property.

What was the testimony as to valuation of the tract taken and the remainder? All of the plaintiffs' witnesses testified that there was no damage to the remainder of the 124 acres, except to two strips of land both running paral-

lel and adjacent to the highway right-of-way. The first strip consists of 2.12 acres, running directly south from the triangular sliver of land, taken by the State to furnish the turning area onto the new highway from Twenty-seventh Street. This sliver extended west on Twenty-seventh Street approximately 54 feet to the west of the point where the new highway will intersect Twenty-seventh Street. The second strip consists of an area of 5.95 acres and a 150-foot strip parallel and adjacent to the west of the highway right-of-way throughout the Frank property. These "strips" or "areas" are not platted, marked, or naturally divided in any way on the property. They were selected and marked off on the maps arbitrarily by the plaintiffs' witnesses as to the area of remainder damage.

The plaintiffs' witnesses fixed a valuation of the land taken varying from $16,135 to $21,810. On the two strips selected for remainder damage, the plaintiffs' witnesses estimated the difference in value before and after the taking of September 12, 1962, as varying between $9,570 (owner Frank) to something over $12,000 (witness Scriven). The total damage they testified to ranged between about $27,500 to $31,380. The State's witnesses fixed a valuation on the tract taken varying between $9,824 to $12,280 based on the difference in value of the total tract immediately before and after the taking of September 12, 1962. This valuation in turn was based on a total valuation of the tract from $225,000 to $246,000 before the taking of the 6.14 acres for the right-of-way. The State's witnesses found no damage to the remainder of plaintiffs' property from the effect of the taking. The jury returned a verdict of $12,280 and, in response to the verdict form furnished it by the court, found that there was no damage to the remainder.

The evidence shows that this property, while now having only nonplatted use as farm property, has a high potential value for residential subdivision purposes. While the testimony of the experts differed widely as

to the significance of the different sales and the factors that each one of them took into consideration in fixing the value of the acreage, it is significant that they fixed a fairly uniform value per acre throughout the whole acreage and that it varied from about $2,000 to about $2,750 per acre. The plaintiffs' witnesses fixed a higher valuation on the lots that had access to Twenty-seventh Street because, although zoned at present for residence purposes only, they gave this area extra value because of a possible change in zoning, the fact that Twenty-seventh Street was a main artery of traffic, and because commercial properties of comparatively high value had been sold a short distance to the west on Twenty-seventh Street. The defendant's testimony, on the other hand, was to the effect that the difference in access before and after the taking would cause no difference in the valuation of the property for the available or prospective uses and that the effect of the taking on value, if any, would be to increase it. It also appeared that the property before the taking bordered on the drainage ditch to the east with no access to a road or other property in that direction.

The plaintiffs assign error in the court permitting the defendant's witnesses to testify as to the value of all of the plaintiffs' land before and after the taking and also error in permitting testimony as to the value of the remainder before and after the taking of September 12, 1962. In substance, they claim this was error because they limited their claim to remainder damage to two small strips next to the highway right-of-way. We see no merit in this contention. The measure of damages for property taken for public use is the fair and reasonable value of the property actually appropriated and the difference in the fair and reasonable market value of the remainder of the property before and after the taking. State v. Dillon, 175 Neb. 444, 122 N. W. 2d 223; McGinley v. Platte Valley Public Power & Irr. Dist., 133 Neb. 420, 275 N. W. 593. The testimony of the value of the whole

tract, and the remainder, before and after the taking, is squarely in conformity with the precise measure of damages announced above and to which this court has long adhered.. And, as we have stated, the diminution in value by the taking to the whole of plaintiffs' property as a unit is the ultimate test of the damage caused. But, plaintiffs' further argue that since they limited their claim for remainder damage to two strips paralleling the taking, the State is limited to rebuttal evidence as to remainder damage to these same two strips and, therefore, it was error to permit the State to show the value of the whole of the remainder. This contention, in effect, would permit a condemnee landowner to set up his own measure of damages. The condemner is entitled, as is the condemnee, to show the value of the whole of the remainder before and after the taking. Ordinarily, the landowner seeks to show the maximum reach of the effect of the taking on remainder damage. Here the plaintiffs voluntarily sought to limit their showing to the two small parallel strips bordering the right-of-way. This, of course, they may voluntarily do, but they cannot preclude the condemner from relying on and showing the damage or lack of damage to the whole of the remainder. It is the effect of the severance on the value of the total unit that produces remainder damage. A condemnee may not split or gerrymander the different portions of his property in order to prevent the application of this rule. If the effect of the taking is to increase the value of the remainder, or some of it, or not diminish the value at all, the condemner is entitled to introduce valuation testimony from which these inferences may be drawn. The parties may not change the legal measure of damages, and the rule applies equally to both parties. Plaintiffs argue McGinley v. Platte Valley Public Power & Irr. Dist., *supra;* and Rath v. Sanitary District No. One, 156 Neb. 444, 56 N. W. 2d 741, quoting language which appears to support their contention. These cases deal with the question of what

constitutes the remainder where there are several tracts of land and generally state the burden of proof. Here, there is no question as to what constitutes the whole tract of land or the remainder as it is one continuous tract of the same character and quality, about 124 acres bordered on the east by the drainage ditch, and having a unity of use and title.

Plaintiffs assign error in the admission of the testimony of the State's expert witness Zich. They contend that since this witness testified "that he was not qualified to place a value on the 6.14 acres taken without considering it as a part of the whole of plaintiffs' 124 acres;" that the testimony was incompetent. This assignment amounts to a repetition of the assignment of error already discussed. They argue that since this witness testified there was no damage to the remainder, it was error to receive his evidence as to the value of the whole of the remainder before and after the taking. But, land taken by right of eminent domain must be valued as a portion of the tract of which it is a part and not as if it stood alone. State v. Dillon, supra; 4 Nichols on Eminent Domain (3rd Ed.), § 14.231, p. 544. This witness valued the whole of the property before and after the taking. From this, the value of the part taken and the value of the remainder before the taking can be ascertained. Then the testimony as to the valuation of the remainder after the taking for comparison furnishes the proper tests against the applicable measure of damages. Plaintiffs themselves fix the value of the land actually taken based on its value as a portion of the whole unit. They may not now complain because the State shows valuations of the whole units both before and after the taking. Plaintiffs argue the failure of the State's witnesses to give proper significance to some previous sales, including a church property, that were made off of plaintiffs' property prior to the taking, and that the witness Zich testified he considered the difficulty of financing a purchase of the whole tract as a factor in fixing value. Plaintiffs

at no time challenged this witness or the State's other witnesses as to qualifications, familiarity with the property, or with the real estate market in the area. The above objections go to the weight and credibility of the witnesses' testimony and not to its competency. A party may not require that a particular witness follow or subscribe to a given formula or method of appraisal or that certain factors not be considered. Damages in a condemnation action are peculiarly of a local nature, and weight and credibility of valuation testimony is for the jury. State v. Wixon, 175 Neb. 431, 122 N. W. 2d 72; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328; State v. Dillon, *supra*. There is no merit to these objections.

Plaintiffs assign error in the use of the words, "if any," in instruction No. 8 given by the court in setting out the measure of damages as to the remainder of plaintiffs' property. They argue that the use of such language by the court implies that there was none. We do not agree. The burden was on the plaintiffs to prove that the severance caused damage to the total unit of the remainder and to prove the amount of that damage. Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200; Twenty Club v. State, 167 Neb 37, at p. 44, 91 N. W. 2d 64. An instruction containing and using this language, "if any," was approved in Dunlap v. Loup River Public Power Dist., 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400. There were issues here both as to whether there was severance or remainder damage and as to the amount thereof. The instruction was correct and without error.

Lastly, plaintiffs argue the insufficiency of the verdict. They do not contend that the verdict is not within the range of valuations introduced in the testimony. They assert, in substance, that the jury found that there was no remainder damage and that, as a matter of law, there must have been remainder damage because of the taking of access on the property bordering the new highway

and the destruction of access to Twenty-seventh Street from the portion of the property immediately to the south of the sliver of land taken for turning purposes which runs about 54 feet west from the highway right-of-way as it intersects Twenty-seventh Street.

We point out that the east border of this property was on a drainage ditch prior to the taking and had no access. The plaintiffs acquired no new access rights with the construction of the new highway, and the court, in instruction No. 15 to which there is no objection, so informed the jury. See § 39-1329, R. R. S. 1943. It is true that some access to Twenty-seventh Street was taken from remainder land lying south, but there would be access to the west both as to the rest of the property and to Twenty-seventh Street. The effect of this taking of access on the available and prospective uses of the property, and its relation to total valuation of the unitary whole of the remainder property, was for the jury. This court cannot, as a matter of law, determine that the value of the whole of the remainder was diminished thereby. It was for the jury to determine what the effect of the severance was on the value of the remainder, and access was only one of many factors for its consideration. It may have determined, which it had a right to do, that the restrictions on access had no effect on the market value of the property, or that it was counterbalanced by an increase in value of the remainder as a result of the taking. Testimony was in conflict as to noise, dust, the effect of traffic, the manner in which the property would have to be faced for residential purposes, available accesses after the taking, possibility of changes in zoning, and use for commercial purposes.

In a condemnation action, where the evidence is conflicting, the verdict of a jury will not be set aside unless it is affirmatively shown that the verdict is clearly wrong. O'Neill v. State, 174 Neb. 540, 118 N. W. 2d 616; State v. Dillon, *supra*. The finding by the jury of no remainder damage in this case has not been shown to

meet this test. The most that can be said is that it has been shown that some of the available uses of a small portion of the whole property have been affected. But, it has not been shown that the value of the remainder, as a matter of law, has been diminished or changed. We have reviewed the evidence, and the case was properly submitted upon competent testimony as to valuation based upon widely varying and different opinions as to the factors to be considered and the weight given the various factors. There is competent evidence to sustain the finding of no valuation damage to the remainder, and this court has no power to disturb it on review. The judgment of the district court is correct and is affirmed.

AFFIRMED.