## BRINSFIELD ET UX. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 400, September Term, 1963.]

*Decided July 20, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT and HORNEY, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Carl H. Lehmann, Jr.,* for the appellants.

*Robert C. Harrison, Senior Assistant City Solicitor of Baltimore,* with whom were *Joseph Allen, City Solicitor,* and *Ambrose T. Hartman, Deputy City Solicitor,* on the brief, for the appellee.

RUTLEDGE, J., by special assignment, delivered the opinion of the Court.

This appeal is taken from a judgment of condemnation absolute upon an inquisition returned by a jury assessing damages in the amount of Sixteen Thousand Five Hundred ($16,500) Dollars, as a result of the taking of real property of the appellants by the appellee. It was conceded that the taking was one of public necessity.

The property condemned is located at 209-211 McMechen Street in Baltimore, Maryland. Mr. and Mrs. Harley P. Brinsfield, the owners, acquired the property in 1951. The improvements consist of a two-story building and basement seventy years old. The first floor was used as a retail outlet for the owners' business, the second floor as an office in conjunction with their business, and the basement for the storage and processing of food. The retail store contains 770 square feet. The property occupies the entire lot which has a frontage of thirty-five feet on McMechen Street and a depth of twenty-two feet. The block in which the property is located is zoned commercial, and that classification extends to the blocks on either side.

The section where the property is located was once a fine residential one, but over the years it deteriorated and fine homes were converted into apartments and rooming houses, and there came a great influx of persons in the lower income groups causing overcrowding and disrepair. In 1957 the city determined it to be a slum area and that it should be cleared and redeveloped. As a result of such a determination, this condemnation suit was instituted.

At the time the Brinsfields acquired the property in 1951, there was a heavy concentration of population in the neighborhood. They started a business of a carry-out sandwich shop

featuring several varieties of the now well-known "submarine" sandwiches under the name of "Harley's". They advertised widely by radio until the store became, according to its owners, "the most famous sandwich store in the United States." The business prospered, and the Brinsfields established a chain of sixteen sandwich shops. This store on McMechen Street remained the most prosperous one of the chain until the exodus caused by effects of the condemnation in the neighborhood began to take important effect upon the business.

Two real estate appraisers testified for the plaintiff-appellee. One said that in his opinion the property has a fair market value of $14,400.00 and the other said $16,500.00. One appraiser for the defendant-appellant said the fair market value was $45,000.00 and another said it was $49,000.00. The jury in its inquisition assessed the damages at $16,500.00.

The trial court permitted the real estate appraisers to testify as to rental values of similar properties, and to capitalize the fair rental value of the property to arrive at the fair market value. He allowed the appellants' appraisers to give their opinions of the fair market value of the property based in part on consideration of dollar volume of business, or gross sales, but refused to permit them on direct examination to give the percentage factor used and the amount of the gross sales. The percentage figure of 5% did, however, get into evidence despite the trial court's ruling.

In their appeal the appellants present four questions:

    I. Did the Court err in refusing to permit the Appellants' appraisers to testify as to the dollar volume of the business conducted upon the condemned premises, and to the percentage factor employed by them to compute the fair rental value of the subject property?

    II. Did the Court err by permitting testimony of the amounts of the rentals of neighboring properties?

    III. Did the Court err in its instructions to the jury to the effect that it was to exclude any increment in value caused by the public project for which the condemned property was needed?

    IV. Did the Court err to the prejudice of the Appellants by intervening by leading and "loaded" questions, in the

direct examination of the Appellants' appraisers, and the cross examination of the Appellee's appraisers?

## I.

As a general rule, an expert who has expressed his opinion as to value may state his reasons for the opinion given, and these reasons may be elicited by the party calling the witness or upon cross-examination. *Hance v. State Roads Commission,* 221 Md. 164.

Authorities are, however, in conflict on the question of whether an expert, in expressing his opinion of value of a commercial property, should be permitted to reveal to a jury the gross sales of the business conducted upon the premises.

Some states hold that gross sales on a property are not relevant and admissible and an expert should not be allowed to consider them and base his opinion, even in part, upon them. Other states hold them relevant and admissible. Maryland, however, has adopted an intermediate course and allows experts to base the opinion of value at least in part on a consideration of gross sales, but does not permit the expert, at least on direct examination, to reveal the amount of the gross sales so considered. *State Roads Commission v. Novosel,* 203 Md. 619. It is not proper in Maryland for an expert to arrive at fair market value by capitalizing gross sales since the nature and location of the property may be but a minor factor contributing to the establishment of a successful business. *Bergeman v. State Roads Comm.,* 218 Md. 137.

In the *Novosel* case an expert, without giving the amount of gross sales, was permitted to give his opinion of fair market value based, in part, on consideration of gross sales.

In the instant case the trial court permitted appraisers for both parties to give their opinions of the value of the property based among other factors, on a consideration of the volume of business; it merely forbade the mention of what that volume was. This Court finds no error in these rulings.

## II.

The Appellant contends, secondly, that it was error to permit the city's appraisers to testify as to rents on similar neighbor-

hood properties, or in other words, to permit the use of "comparable rentals."

The use of comparable sales in establishing damages in eminent domain cases has long been established in Maryland, and the use of rent on a property being condemned is permissible for the purpose of capitalization. *Bergeman v. State Roads Comm.,* 218 Md. 137.

Courts have approached the use of comparable rentals with more caution than they have the use of comparable sales. *Nichols on Eminent Domain,* Vol. 5 (3rd Ed.), Sec. 19.21 (1) points out the objections which have been made to their admissibility which are largely based on considerations of relevance and similarity or the lack thereof. He states, however, that the use of such evidence has been sanctioned on cross-examination for the purpose of testing the opinion of a witness and that it has also been used for purposes of comparison to determine whether the existing rent of the property involved fairly reflects the rental value of such property, and that where other evidence of value is unavailable, reference has occasionally been made to existing rentals from similar property in the vicinity.

*Orgel on Valuation under Eminent Domain,* (2d ed.) Vol. 1, § 180, seems generally more favorable to the admissibility of such evidence. He says:

"Since 'rental value' is an opinion estimate of the probable annual gross or net rentals of the property, one might suppose that it would be more frequently excluded than would evidence of actual realized or contracted rents. As a matter of fact, it is nearly always admitted when presented by properly qualified witnesses. * * * Generally speaking, the courts regard rental value as a value based upon or inferred from the rentals of other similar properties in the neighborhood. Certain parallels may be drawn between the courts' treatment of evidence in proof of market value and their treatment of evidence to show rental value. In general the same factors which would render an estimate of market value incompetent will serve to exclude evidence of rental value."

In this case the city's appraisers went into the comparability of the location and of the usable space, the terms of the rental agreements, a description of the property, the names of the parties involved, and the source of the information. The trial court found that properties on which rentals were used met the tests of comparability.

This court has often held that a trial court has considerable latitude in the exercise of discretion in determining comparable sales in condemnation cases. *Lustine v. State Roads Comm.,* 217 Md. 274. We see no reason why the trial court should not have the same latitude in determining comparable rentals, and we find no abuse of discretion in this case.

The appellant further contends that the opinion of the city's experts were based, in part at least, upon hearsay, suggesting by argument that the amount of rents in comparable leases should have been testified to by the lessors or lessees, and not proved by inquiry only by the experts. The practicability of the procedure suggested by the appellant is highly questionable; it would place as onerous a burden upon the defendant as it does upon the plaintiff.

The opinions of experts on real estate values whose knowledge is based partly upon inquiry are generally admissible. In *Bergeman v. State Roads Comm., supra,* this court permitted the use of such testimony. A detailed study of the matter is found in 159 A.L.R., 7, 27 and 43. Said one court: "That much of his information as was derived from others is not objectionable, for, necessarily, knowledge of values is largely so acquired and the hearsay rule is without application." *Wiley v. Dean Land Co.,* 171 Iowa 75, 77, 153 N. W. 145. See also *Pierce v. Chicago & M. Electric R. Co.,* 137 Wisc. 550, 119 N. W. 297.

Wide latitude is properly vested in the trial court to determine if a witness can qualify as an expert, and as a collateral matter, the extent to which his opinion may be based on inquiry (or as the appellant would have it, hearsay) is within the discretion of the trial court. We find no abuse of that discretion in this case.

### III.

The appellant also contends that the trial court erred in its instruction to the jury, contending that while it was a wholly

valid statement of law, it was "utterly meaningless in the context of this case."

The trial court instructed the jury in the language of the statute. Code (1963 Supp.), Art. 33A, § 6 (added by Acts, 1963, Ch. 52) reads:

> "The fair market value of property in a proceeding for condemnation shall be the price as of the valuation date for the highest and best use of such property which a seller, willing but not obligated to sell, would accept for the property, and which a buyer, willing but not obligated to buy, would pay therefor excluding any increment in value proximately caused by the public project for which the property condemned is needed, plus the amount, if any, by which such price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of such property and the date of actual taking if the trier of facts shall find that such diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning such public project, and was beyond the reasonable control of the property owner."

The property was condemned for the purpose of clearing a so-called slum area. Under such circumstances the Maryland Legislature has said that the jury should not consider either increase or diminution in the value because of the use to which the property is to be put. The trial court merely explained this rule for determining fair market value to the jury.

It is conceivable that without such an instruction some jurors might speculate that a project such as this one might cause values to be increased, while some might find such a project would depreciate values. They were instructed not to indulge in any such speculation.

We find no error in the instruction of the trial court.

### IV.

The appellant's fourth contention is that the trial court erred

in intervening by asking "loaded" questions of the appellant's witnesses.

The questions referred to were questions as to whether the appellant's appraiser was familiar with, or had actual knowledge of any "percentage" lease on McMechen Street. The witness said he thought he knew of one but finally admitted that he was not sure. We find no abuse of the trial court's right to seek to elicit the facts. Cf. *Rickards v. State,* 129 Md. 184.

For the above reasons the judgment below is affirmed.

*Judgment affirmed, appellants to pay the costs.*