Harry H. Bickels et al., appellants, v. State of Nebraska, Department of Roads, appellee.

135 N. W. 2d 872

Filed June 18, 1965. No. 35890.

Floersch & Floersch, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is a condemnation action involving the total taking of two lots at Thirty-sixth and A Streets in Omaha, Nebraska. A neighborhood grocery store was in operation on the premises on April 1, 1960, the date of the taking. The stock of groceries and meats, and the removable fixtures which were located on the improvements at that time, were not included in the condemnation.

The appellants, Harry H. Bickels and Julia J. Bickels, owned the premises and had profitably operated the business thereon for several years. Their average yearly sales, using the last 3 years, was $171,000. Appellants were unable to locate another store to which they could move their stock and fixtures, so attempted to dispose of them by special sales. They sold some of the stock by discount sales in the ordinary course of trade, and the rest in quantity sales to other grocers. Most of the latter they delivered to the purchasers. The fixtures

were sold piecemeal, with the exception of a dairy case which appellants had moved to storage. The cost of moving this case was $35. Appellants vacated the premises in May 1960. They did not resume a business venture until December 1961, when they purchased the stock and fixtures of another grocery store in a different section of the city of Omaha.

Appellants' assignments of error, with one exception, are premised on the trial court's refusal to permit them to prove loss of profits by reason of the interruption of their business during the period of relocation, and the loss they claim was occasioned by the forced sale of the removable fixtures and the stock.

The law in this jurisdiction is well settled that when land occupied for business purposes is taken by eminent domain, anticipated profits from the continued carrying on of the business in its established location cannot be considered in estimating the damages. James Poultry Co. v. City of Nebraska City, 135 Neb. 787, 284 N. W. 273; Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865.

The primary question involved herein is whether section 76-710.01, R. S. Supp., 1963, has changed the rule to permit a recovery for loss of profits. This section reads as follows: "Where any condemner shall have taken or attempts to take property for public use, the damages for taking such property shall be determined according to the laws of this state irrespective of whether the condemner may be reimbursed for a part of such damage from the federal government and such damages shall include all compensable damages suffered by the condemnee including but not limited to the reasonable cost of any necessary removal of personal property from the real estate being taken and condemnee's abstracting expenses."

This statute was originally passed by the 1959 Legislature in the following form: "Where any condemner shall have taken or attempts to take property for public

use, the damages for taking such property shall be determined according to the laws of this state irrespective of whether the condemner may be reimbursed for a part of such damages from the federal government and such damages shall include the reasonable cost of any necessary removal of personal property from the real estate being taken." The statute was then amended in 1963 by adding the portions italicized in the following quotation: "* * * and such damages shall include *all compensable damages suffered by the condemnee including but not limited to* the reasonable cost of any necessary removal of personal property from the real estate being taken *and condemnee's abstracting expenses.*"

It is appellants' assertion that the use of the words "all compensable damages suffered by the condemnee including but not limited to" in the last amendment indicates an intention on the part of the Legislature to increase the amount of the recovery allowed the condemnee in a condemnation case to include all damages sustained if provable, whether previously compensable or not. We do not so construe it. We construe "all compensable damages" to refer to such damages as are now recoverable by our laws. This seems to be evident by the inclusion of the additional specific items. If the Legislature had intended to allow recovery for any and all damages, whether previously compensable or not, limited only by the condemnee's ability to prove them, it does not seem likely that it would have added the specifics because they would be included in the general provision. This is in harmony with well-recognized principles of statutory construction. In Lang v. Sanitary District, 160 Neb. 754, 71 N. W. 2d 608, we said: "In construing statutes, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent so deduced

from the whole will prevail over that of a particular part considered separately."

Appellants complain of the refusal of a tendered instruction which would have permitted the allowance of the costs of removal if the jury found the stock and fixtures were in the premises on the date of condemnation, regardless of whether any removal expense was incurred. We suggest that the statute permits the recovery of the cost of any *necessary* removal of personal property from the real estate being taken. Certainly, if the personal property is sold in such manner that the condemnee incurs no expense in its removal, it is hard to understand on what basis he should be compensated. In appellants' case the bulk of the merchandise was sold through regular trade channels. The hard-to-move items were sold to other grocers, and were delivered by the appellants themselves to the purchasers. There is, however, no evidence in this record on the cost of these deliveries. If such expenses were proved, they would be recoverable. The fixtures, except for the dairy case, were sold on the premises and were moved by the purchasers.

Appellants contend the price of the fixtures were made attractive enough that the buyer was willing to move the item bought. The fixtures, however, were priced by an expert and there is no indication in the record that the price did not reflect the then value. If appellants had moved them to another location and had been reimbursed for the moving expense, there is no indication in the record that the items would have been priced differently than they were. Appellants clearly were entitled to the recovery of the $35 paid for the moving of the dairy case, which is the only item they admittedly paid to remove. The court directed on this item.

The appellee, in the cross-examination of appellants' witnesses, as well as in the direct examination of its own witnesses, put into the record the names of the witnesses who appeared for the appellants before the board

of appraisers. These included one Lewis C. Sholes who did not appear at the district court hearing. Appellee then adduced evidence as to the qualifications of Lewis C. Sholes as an expert appraiser. This testimony was admitted over objection. At the close of the testimony, appellants moved to strike all of it and to instruct the jury to disregard it. The motion was overruled. There is no question this testimony was incompetent, irrelevant, and immaterial, and did not tend to prove or disprove any issue in the case. The issue was the value of the property taken and not who may or may not have appeared before the board of appraisers or what evidence if any was adduced before the board. The constant reiteration of the name of Lewis C. Sholes was clearly an attempt on the part of appellee to get before the jury the fact that appellants had used an expert appraiser before the board of appraisers but for some reason failed to produce him at the trial. Appellee argues that: "* * * Lewis C. Sholes is not just a possible witness picked out of the blue. He is an expert real estate appraiser hired by plaintiffs, for the express purpose of testifying in behalf of plaintiffs. Therefore, when such a witness is not called to testify during trial, that fact does, indeed, give rise to some justifiable speculation."

It is true that in certain situations, the unexplained failure to call a witness who possesses peculiar qualifications may give rise to an inference that the testimony of the uncalled witness would not sustain the contention of the party. Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328. This, however, is not one of those instances. The meeting of the board of appraisers to assess the damages affords the condemnee and condemner a chance to produce evidence of value, but the appraisers are also required to inspect the premises and because of their special qualifications are not bound by the testimony adduced at the hearing. We have heretofore changed the rule so that the evidence of the award of appraisers cannot be ad-

duced in the district court trial. Langdon v. Loup River Public Power Dist., 142 Neb. 859, 8 N. W. 2d 201. What transpired before the board of appraisers is not competent testimony in the district court hearing unless in the proper situation it is adduced in a legal manner as impeachment testimony. It is only right that we should not permit inferences, proper or otherwise, to be drawn from the failure to use the same alleged experts who appeared before the board. If a condemnee does not feel he wishes to rely on an alleged expert he consulted, by calling him as a witness, he should not be required to explain his action.

Because this judgment is to be reversed, we note a more serious error which appellants do not assign. That is the admission over objection of impeaching testimony without the laying of a proper foundation for its admission. A proper motion was made to strike this testimony, and was overruled. The motion should have been sustained. As we view this record, the actions of appellee prevented appellants from having a fair trial, and for that reason the judgment must be reversed and the cause remanded for a new trial in conformity with the law.

REVERSED AND REMANDED.