**STANDARD OIL COMPANY, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellee.**

Court of Appeals of Kentucky.

Dec. 16, 1966.

Rehearing Denied June 2, 1967.

Amos H. Eblen, Lexington, O. Grant Bruton, Charles G. Middleton, Jr., Louisville, for appellant.

Robert Matthews, Atty. Gen., H. C. Smith, Special Asst. Atty. Gen., Frankfort, W. O. Gilbreath, Lexington, for appellee.

HILL, Judge.

The landowner, appellant herein, appeals from a jury verdict and judgment for $26,583 in a highway condemnation action filed by appellee to condemn the entire lot and improvements of a service station at the intersection of Fourth Street and Georgetown Road in the city of Lexington.

The commissioners appointed by the county court allowed appellant $40,000. Both parties filed exceptions to the report of the commissioners.

The amount of the verdict is within the range of the testimony. Appellant's witnesses gave their estimates of value of the property ranging from a low of $35,000 to a high of $45,000; while appellee's two witnesses fixed the value at $21,200 and $22,500.

We are asked to reverse the judgment on the sole ground the trial court refused to allow appellant to prove value by use of a formula of the gasoline industry under which dollars of land value are attributed to each gallon of gasoline sold per month at the site. The court allowed appellant to prove the gallons sold but declined to allow the dollar value to be placed thereon. The evidence for appellant showed that in the year 1955 the station sold 97,864 gallons of gasoline and showed a consistent increase until the last twelve months of its operation when it sold 212,805 gallons, or an average of 17,734 gallons per month. Appellant offered to and did prove by avowal that the industry used and recognized, for the purpose of determining the market value, a standard formula of $2.50 to $4 per gallon per month (i. e. a station selling an average of 17,000 gallons per month is worth a minimum of $2.50 multiplied by 17,000 or $42,500). To use the maximum value of $4, the market value under this formula amounts to $68,000. Apparently, the trial court relied on Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963). But nothing is said in Sherrod that prohibits a property owner from showing the reasonable rental-producing qualities of property or its production, whether it is farm land, a parking lot, or a milch cow. Income-producing quality of real estate in condemnation cases is not to be confused with loss of profits where good or bad management may play an important role.

A case with a factual situation practically identical with the case at bar is that of our neighbor state of Missouri in St. Louis Housing Authority v. Bainter, Mo., 297 S.W.2d 529 (1957). Inasmuch as Bainter also discussed profits in addition to the standard or formula with which we are concerned here, we quote at length therefrom (p. 534):

"No one questions the general rule stated by Lewis in his work on Eminent Domain (Vol. 2, 3rd Ed., Sec. 727), as follows: 'While it is proper to show how the property is used, it is incompetent to go into the profits of the business carried on upon the property. No damages can be allowed for injury to business. The reason is that the constitution and

the statutes, as ordinarily worded, require only that just compensation shall be made for the property taken.' "

\* \* \* \* \* \*

"Nor does respondent question the statement quoted in Accomac Realty Co. v. City of St. Louis, 347 Mo. 1224, 152 S.W.2d 100, 102, as follows: 'With remarkable unanimity the American jurisdictions hold that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings.' "

In Bainter, the court permitted evidence of gallonage and the standard, recognized value thereof as we see from the following excerpt from page 535 of ·the opinion:

"The evidence offered as to the custom and practice in the business in using the formulas mentioned as a basis for determining the value and the rental value of such stations and the further testimony as to the gallonage sold on the premises and the value and rental value thereof was properly admitted. The jury was entitled to consider all of such evidence in determining the fair market value of the premises in question. While no specific authority is cited, and we have found none, the application of general rules would indicate that evidence of gallonage of gasoline sold on the premises is properly admitted for consideration by the jury on the issue of rental value and fair market value of the premises condemned where, by accepted standards and criteria in the trade or business, rentals and values of such property are based thereon."

■ We conclude appellant was entitled to prove the standard, recognized, and accepted (by the gasoline industry) formula for arriving at the market value of service stations and to prove the price used in such formula.

The judgment is reversed with directions to grant appellant a new trial consistent with this opinion.

MONTGOMERY, J., dissents.

MONTGOMERY, Judge (dissenting).

I respectfully dissent from the majority opinion because it permits the introduction of an artificial standard by which to determine the value of service station property, in violation of principles well established in many cases concerning varying types of property. See City of Newport Municipal Housing Commission v. Turner Advertising, Inc., Ky., 334 S.W.2d 767; Commonwealth, Department of Highways v. Smith, Ky., 358 S.W.2d 487; Commonwealth, Department of Highways v. Sherrod, Ky., 367 S.W.2d 844; Commonwealth, Department of Highways v. Eubank, Ky., 369 S.W.2d 15; Robinette v. Commonwealth, Department of Highways, Ky., 380 S.W.2d 78.

There are too many variables in determining the value of a service station to apply an artificial standard of $2.50–$4.00 per gallon of gasoline pumped per month. This standard does not refer to the profit made from pumping a gallon of gasoline or rental based thereon. The number of gallons pumped at a station can be attributed to many extraneous factors, such as management, hours of operation, whether the gasoline is sold at cut-rate prices, whether trading stamps, glassware, chances on prizes, etc., are given, and many others. A combination of these factors could well cause a high number of gallons to be pumped and at the same time cause the property to be operated at a loss, which necessarily would enter into the question of whether or not the property was valuable.

The age of the station improvements are pertinent. The improvements here were twenty-seven years old. Is the same artificial yardstick to be applied to old and new stations alike?

The very yardstick itself indicates its unreliability: there is a 60% variance between the $2.50 and the $4.00 limits of the yardstick. When is the $2.50 yardstick to be applied and when is the $4.00 yardstick to be applied? The court has enough woe in condemnation cases without adding this one.

For these reasons I respectfully dissent.