Y Motel, Inc., a Nebraska corporation, et al., appel-
lees, v. State of Nebraska, Department of Roads,
appellant.

227 N. W. 2d 869

Filed April 17, 1975. No. 39591.

Clarence A. H. Meyer, Attorney General, Warren D. Lichty, Jr., and Royce N. Harper, for appellant.

Rollin R. Bailey of Davis, Bailey, Polsky, Huff & Denney, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

The State prosecutes this appeal from the award to the plaintiffs in an eminent domain proceeding. The State alleges 27 assignments of error. In affirming the judgment we consider only those we deem material enough for comment.

Y Motel, Inc., is a family corporation owned by Vernon and Elaine Strauch. The corporation is the owner of a tract of 12.8 acres at the juncture of U. S. Highways Nos. 77 and 6. The tract is somewhat triangular in shape due to Highway No. 6 running in a northeasterly to southwesterly direction. Located on the south 4.83 acres is a modern motel facility known as the Colonial Inn, consisting of 64 units, a restaurant, swimming pool, and lounge. The motel faced old Highway No. 77 which has been abandoned in this area and now is a city street. The balance of the land, referred to as the north 8 acres, was zoned commercial and was not used in connection with the motel. It was acquired by the Strauchs for investment purposes. It was vacant and unimproved except for a barn.

Relocated Highway No. 77, with four lanes, approximately 100 feet wide, cuts across the north 8 acres in a northwesterly to southeasterly direction, leaving two tri-

angular tracts. Both Highway No. 6 and Highway No. 77, after the relocation of Highway No. 77, have center islands and controlled access. All driveways on old Highway No. 77 remain open. There are four, one being located near the south point of the triangle. There were formerly two driveways on Highway No. 6. The State condemned the right of ingress and egress to and from the motel to Highway No. 6 on the south except for one driveway located at the far easterly edge of the motel property. The motel improvements are all located to the west of this entrance.

A small strip of land along the south boundary line of the motel tract lying next to Highway No. 6 was also condemned, and 607.4 square feet of the motel site was temporarily taken for construction of the driveway. Another strip, 2.23 acres, across the north 8-acre tract was permanently condemned. This is the new portion of Highway No. 77 which divided the area into two triangular tracts.

Plaintiffs' witnesses fix the damage to the 8-acre tract from $82,938 to $97,000, and damage to the motel area from $132,500 to $150,000. The State's witness fixed the damage to both areas at $50,200. The county court appraisers assessed plaintiffs' damage at $82,693. The jury verdict, which is being appealed herein, was for $120,079.40. This is below the damages fixed by the plaintiffs' witnesses and considerably more than the figure given by the State's witness.

Plaintiffs, in presenting their evidence, divided the two tracts. They used one of the owners and two qualified real estate appraisers as to the north 8 acres. They used a licensed real estate broker and appraiser who was a motel expert, and one of the owners as to the motel area. The State used one expert witness to testify to the damage to the north 8 acres and also to the damage to the motel area. He added them together to arrive at his total damage figure.

The State objects to the procedure used by the plain-

tiffs in permitting their witnesses to value the 8-acre tract and the motel area separately. Ordinarily, this might be error. Here, however, the two tracts were separate and divisible. From the standpoint of use and adaptability they were totally unrelated and presented entirely different factors influencing the element of damages. This is evident from the method pursued by the State's appraiser for the two tracts. The State's assignment is patently frivolous. Ordinarily, the entire property involved in an eminent domain proceeding is to be valued and damages to it assessed as a whole. See Frank v. State (1964), 176 Neb. 759, 127 N. W. 2d 300. Where, however, it is clearly divisible from the standpoint of use and adaptability, presenting different factors and elements of damage, it definitely is not error to permit such division. In determining whether the property is to be considered as a whole or as units, usually unity of use is given greater emphasis, and has been called the controlling and determining factor. 29A C. J. S., Eminent Domain, § 140, p. 591.

One of the chief complaints of the State is that plaintiffs' motel expert was permitted to consider gross income from room rentals in arriving at the valuation of the motel portion of the property. The evidence in question goes only to the determination of damages measured by the difference in the value of the motel property before and after the taking. In this respect we are concerned with the temporary easement of the motel property during construction, the taking of a small strip of land along the south boundary line of the motel, and the limitation of access, that is, ingress and egress to the motel property after the taking. The balance of the taking was the 100 foot wide strip cutting the 8-acre tract into two triangular parcels which will be considered hereafter.

Plaintiff's motel expert has operated his own business of motel sales and appraisals throughout an 11-state midwestern area since 1965. Since 1970, he has handled

motel sales of over $20 million. He deals exclusively in motels and is considered to be the largest motel broker in the midwest in number of motels sold. The motels he used for comparison purposes were motels actually sold by him. In addition to being a motel broker he also operates motels in Lincoln, Nebraska, and other areas. For comparison purposes, he confined his market area for motels to the plains states west of the Mississippi River and east of the Rockies, exclusive of resort areas such as Denver, Colorado Springs, the Ozarks, and the lake country. He arrived at the before taking value of the motel property in question by comparing it with sales of what he considered comparable motel properties in the market area within a reasonable time before the taking. These motels were located in Nebraska, Kansas, Missouri, Arkansas, Oklahoma, and Texas.

In determining whether such properties were comparable, plaintiffs' expert considered location, size (number of units), nature of clientele (percentage of commercial and tourist), age of improvements, nature of their construction, condition, facilities such as living quarters, meeting rooms, restaurant, lounge, annual gross room rentals, and future prospects for the motel property as related to its current situation. He testified that prospective buyers of motels consider all these factors. The gist of his testimony was that gross room rental was the substantial factor considered by prospective purchasers. It was his further testimony that management is not a dominant factor in the consideration of the valuation of a motel. Management, at best, would not show more than a 10 percent variation up, to 15 percent variation down from the average property with exceptionally good or exceptionally poor management. He considered the Strauchs to be good managers.

We are in agreement with plaintiffs' expert that gross room rentals as it relates to the size of the property

could clearly be a substantial factor. The exclusion of the testimony of gross room rentals as a factor of comparability would have the anomalous effect of permitting the expert to consider it, but preventing a disclosure of this portion of the basis of his opinion.

We are dealing with a specialized type of property. Expenses in most instances can be more or less controlled by management. The gross rental revenue could furnish a prospective buyer a better criteria for comparison purposes with other motels than net income. The evidence is undisputed, gross room rental is a major factor which motel buyers consider, along with other elements of comparability. It would be a miscarriage of justice to sustain the State's contention. The proposed Nebraska Rules of Evidence would make the evidence admissible. Our present holdings do not exclude it except by analogy to net profits. This analogy is clearly inappropriate and inapplicable.

We also note it seems evident that a limitation of access would affect the use of the property by diminishing gross room rentals. This would certainly affect market value.

To arrive at his value, the expert compared the selling price of the comparable properties with the gross room rentals and arrived at a factor which he called the gross room rental multiplier. This multiplier varied from 2.77 to 4.56, or an average of 3.85. He arrived at the market value of the Colonial Inn Motel before the taking by adjusting the multiplier to what he considered proper in light of the comparison of all the factors with the comparable motels. The multiplier he used was three. He multiplied the gross room rental by this figure to arrive at a market value before the taking of $537,500. In his opinion, the after-taking value was $405,000. This difference he attributed primarily to limitation of ingress and egress because that item most directly affected gross room rentals. It also

included the temporary easement and the small strip of land taken along the south border of the motel.

In Kohler v. Ford Motor Co. (1971), 187 Neb. 428, 191 N. W. 2d 601, we said: " 'The expert has * * * a power to draw inferences from the facts which a jury would not be competent to draw. To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' "

We determine the challenged evidence was admissible because: (1) It was one of the items by which the jury could gauge the comparability of the sales relied upon for comparison. In each case the expert stated the gross room rental of each of the comparables as well as the number of units and the sale price. The jury was thus better able to judge the validity of the multiplier which the witness used. (2) It was an item to which prospective buyers gave substantial consideration—and thus comes within the general rule that in determining market value of property an expert and a jury are entitled to consider whatever a willing buyer would consider. (3) The property was adapted to only one use—and the limitation of access directly affected that use and value.

The State urges as error the court's order excluding its expert witness' method of capitalizing income to assist in arriving at a value of the motel tract. The State's expert testified that to assist him in arriving at the value of the motel property he was going to utilize a capitalization of net income from the operation of the motel, restaurant, and lounge, using typical income and typical expenses without knowing or using the financial operations of the motel, restaurant, or lounge.

To phrase it another way, he was starting with a gross income *estimate* from which he deducted all his *estimated* operational expenses, thereby coming up with an *estimated* net income which he in turn capitalized into the value of the improvements. The following questions are typical: "And now, I don't want you to mention any figures, have you obtained a typical net income that could be an index to this business for the restaurant? A- Have I obtained? I have estimated one. Q- Estimated? A- Yes. Q- Okay. Have you estimated a typical income for the lounge? A- Yes." The trial court properly sustained an objection to this approach.

There is no such thing as typical income or expenses for the operation of a restaurant, motel, or lounge. To permit a person, even a qualified one, to appraise a tract of land on the basis of capitalization of income by an estimate of the operation of a typical business would be guesswork at every stage.

The State relies upon Iske v. Metropolitan Utilities Dist. (1968), 183 Neb. 34, 157 N. W. 2d 887, and contends that the method used by its expert was a proper method for determining the value of the improvements. In the Iske case the witness capitalized royalty income from minerals in place and rental income to be received from the property after the minerals had been removed. In this case the testimony was based upon assumed or estimated gross income and estimated operational expense to come up with an estimated net income which was to be used to capitalize the value of the improvements.

This type of testimony would require the property owner to introduce his actual income and expense figures to prove market value or to discredit the testimony of the witness. This he is not permitted to do. As we said in Verzani v. State (1972), 188 Neb. 162, 195 N. W. 2d 762: "In an eminent domain proceeding, anticipated profits from the continued carrying on of a business in an established location cannot be considered in esti-

mating the damages, and the profits of a business cannot be shown for the purpose of proving the value of the property."

The State argues that the procedure used by the plaintiffs' expert witness was in effect a capitalization of profits. We disagree. Plaintiff's expert used the actual gross income figures, and without relation to the actual profits compared those figures with the gross income in 10 actual sales of comparable properties. He then adjusted the other comparables and obtained a multiplier. This is the scientific or technical method used by motel appraisers.

The State complains about the overruling of its objection to a question of its project engineer as to whether federal funds were involved in the project. It appears to be the majority rule that evidence of the use of federal funds in a state road project is not admissible in an eminent domain proceeding. The evidence was not required to comply with sections 39-1329 or 39-1330, R. R. S. 1943, as the State was clearly the condemning party. We are convinced, however, that on the record in this case the error could not have been prejudicial.

The State argues the trial court erred in permitting plaintiff's motel expert to use as comparable properties the sales which he had made in Oklahoma, Kansas, Missouri, Arkansas, and Texas. There is no merit to this assignment. We are dealing with a type of property that ordinarily would not have too many comparable sales in the immediate area of the property to be appraised. The fact that an expert witness uses sales of properties in other states as a basis of comparison in determining value rather than comparable sales in the vicinity of the property condemned goes to the foundation for, and the weight to be given to, the expert's testimony. The admissibility of expert testimony is ordinarily within the discretion of the trial court and its ruling will be upheld on appeal unless an abuse of dis-

cretion is shown. Dovey v. Sheridan (1972), 189 Neb. 133, 201 N. W. 2d 245.

The final assignment of error we consider is the State's challenge to the allowance by the trial court of a $15,000 attorney's fee under section 76-720, R. R. S. 1943. It is unnecessary to detail the factors involved in the determination of a reasonable attorney's fee. They are set out in Jensen v. State (1969), 184 Neb. 802, 172 N. W. 2d 607. The allowance of a reasonable attorney's fee for necessary services performed by an attorney will not be reversed on appeal in the absence of a showing of an abuse of discretion by the trial court in making the allowance. Jensen v. State, *supra*. While the fee is very adequate, when all the circumstances and the applicable rules of law involved are considered, we can find no abuse of discretion in the allowance made.

For the reasons stated, the judgment of the District Court is correct and is affirmed.

AFFIRMED.

NEWTON, J., dissenting.

I dissent. The primary question deals with the valuation by plaintiffs' expert on the basis of gross income from room rentals. The gross was then compared with that of other motels sold throughout the midwest and prices paid.

As stated in Annotation, 7 A. L. R. 163, and in 27 Am. Jur. 2d, Eminent Domain, § 285, p. 83, and § 431, p. 338, American jurisdictions have held with remarkable unanimity that evidence of profits derived from a business conducted on property is too speculative, uncertain, and remote to be considered as a basis for ascertaining the market value of property taken in eminent domain proceedings. Nebraska adheres to this rule. See, Verzani v. State, 188 Neb. 162, 195 N. W. 2d 762, pertaining to a racetrack; Bickels v. State, 178 Neb. 825, 135 N. W. 2d 872, involving a grocery store. There is a generally recognized exception to this rule in regard to rental properties where the income is derived directly from

the use of the real property as distinguished from a business. See, Annotation, 65 A. L. R. 455; 27 Am. Jur. 2d, Eminent Domain, § 433, p. 342. In the case of business income much depends on such factors as management, available capital, advertising, business connections, the times, etc. In 5 Nichols on Eminent Domain (3d Ed.), § 19.3 (1), it is stated in regard to commercial property: "If the owner of property uses it himself for commercial purposes, the amount of his profits from the business conducted upon the property depends so much upon the capital employed and the fortune, skill and good management with which the business is conducted, that it furnishes no test of the value of the property." Nichols states in vol. 5, § 19.21, that: "Although existing rents have been held admissible as *evidence* of market value, they are not generally accepted as the *sole criterion of market value. * * ***

"In considering evidence of existing rents as an element in the determination of market value care must be taken to distinguish between gross rentals and net rentals. It is the latter which is ordinarily considered as an evidentiary factor in the valuation process."

In view of the foregoing, to what extent is the gross income of a business, as distinguished from net income or profits, affected by similar considerations? In the present instance the gross income from the lounge and restaurant business were not considered. They were apparently thought to be either inadmissible or of no consequence. Plaintiffs' expert witness figured valuation in the case of motels by multiplying gross room rentals by a factor of three to four. This factor was fixed by considering other elements such as condition of buildings, modernity, furnishings, rates, competition, location, type of business, and presence of a lounge and restaurant for service to customers, etc.

It must be conceded that the room rentals received by a motel are not essentially derived from the direct use or inherent value or productivity of the real estate. On

the contrary, there are many other elements involved, such as the cleanliness, modernity, furnishings, rates, and general attractiveness of the rooms, the availability of restaurant, lounge, and convention facilities, and management, advertising, business connections referring business as in the case of Holiday and Ramada Inns, etc. In other words, many of the same factors which render net business income inadmissible are also present in regard to gross room rentals. There are not many cases dealing directly with this subject but the majority rule appears to be that such a method of determining valuation is not proper or admissible.

In regard to a radio station, it was held that gross income was inadmissible. See Johnson County Broadcasting Corp. v. Iowa State Highway Commission, 256 Iowa 1251, 130 N. W. 2d 707.

In Wilson v. Iowa State Highway Commission, 249 Iowa 994, 90 N. W. 2d 161, it was held that the gross income from a cafe was inadmissible to prove value.

In City of Chicago v. Central Nat. Bank in Chicago, 5 Ill. 2d 164, 125 N. E. 2d 94, it was held that evidence of gross receipts from a restaurant offered to show rental value of the condemned property was inadmissible to prove market value.

In City of Bonner Springs v. Coleman, 206 Kan. 689, 481 P. 2d 950, the admission of gross income from a farm machinery business for the purpose of estimating the value of the realty was held to be prejudicially erroneous.

In May v. Dewey, 201 Va. 621, 112 S. E. 2d 838, it was held that evidence of rent paid by a tenant to a landlord was admissible to prove the value of land, but evidence as to gross sales or percentage thereof from which rent was computed was not admissible.

In Commonwealth, Department of Highways v. Fister (Ky. App.), 373 S. W. 2d 720, it was held that gross income from a motel business was incompetent on the question of value.

In State ex rel. State Highway Commission v. Flynn (Mo. App.), 263 S. W. 2d 854, it was held that evidence of rental income from unfurnished apartments was admissible, but not rental income from furnished apartments which reflected not only value of the realty but also of personal property.

In Brinsfield v. Baltimore City, 236 Md. 66, 202 A. 2d 335, it was held that experts may arrive at value of property condemned by considering gross sales but they may not reveal amount of gross sales so considered, at least not on direct examination, nor may they arrive at fair market value by capitalizing gross sales. The case dealt with a retail store business.

In Regents of University of Minnesota v. Irwin, 239 Minn. 42, 57 N. W. 2d 625, it was held in a condemnation case: "The rental value of furnished premises may be considered in determining reasonable market value, provided a proper deduction for value of furnishings is taken into consideration."

In Commonwealth, Department of Highways v. York (Ky. App.), 390 S. W. 2d 190, it was held that an expert witness could not compute the value of a motel solely on the basis of income.

There are a few cases where formulas such as were here used have met with approval. See, Standard Oil Co. v. Commonwealth, Department of Highways (Ky. App.), 414 S. W. 2d 570; State ex rel. Department of Highways v. Bowles (Okla.), 472 P. 2d 896. They represent a minority view. A person buying a business, together with the property upon which it is located, is, of course, interested in the volume of business done and the gross and net profits. This definitely affects the price he will pay for such a business and property. The difficulty is that a business is not a compensable property and the amount paid for it cannot be separated from the value of the property. The use of formulas based upon either gross or net profits necessarily includes compensation for the business as well as the prop-

erty. It appears that experts in the field of motel sales use the gross income formula heretofore mentioned. As heretofore pointed out, that formula deals not with the value of the real property but with the value of the business as a whole. I conclude that evidence of net profits from the motel business was properly excluded and that evidence of value based on a system of multiplying gross room rents was erroneously admitted.

It is asserted that management has a minimal effect on the gross income of a motel. This is obviously incorrect. A manager who operates a motel in the highest motel tradition cannot be compared with a manager who operates a rundown, filthy motel with a lack of those desirable facilities found in the better operated institutions. It is apparent that the latter type of manager can take over a first-class motel and run it into the ground in a comparatively short period of time. Had we such a manager in the Y Motel who had permitted its business and consequently its gross income to deteriorate, plaintiffs' expert would necessarily, under his formula, have had to reduce his estimate of the value of the property by thousands of dollars due solely to the type of business operation. Notwithstanding this factor, the essential value of the real estate would remain unchanged. This clearly demonstrates that using such a criterion, the value of the real estate and the value of the business cannot be separated. The majority opinion inadvertently recognizes this factor when it states: "To permit a person, even a qualified one, to appraise a tract of land on the basis of capitalization of income by an estimate of the operation of a typical business would be guesswork at every stage."

Actually this is exactly what the plaintiffs seek to do, to capitalize the gross income of the motel.

BOSLAUGH, J., joins in this dissent.