LESTER LANTIS ET AL., APPELLANTS AND CROSS-APPELLEES, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

467 N.W.2d 649

Filed March 29, 1991.   No. 87-1090.

Eric W. Kruger, of Rickerson, Welch & Kruger, and J. Patrick Green for appellants.

Herbert M. Fitle, Omaha City Attorney, and Michael A. Goldberg for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Complaining that the trial court erred (1) in failing to admit testimony of their expert witness and (2) in failing to properly instruct the jury, Lester and Viola Lantis, husband and wife, and other parties who are mortgagees of the land involved appeal a $48,500 verdict awarded them against the City of Omaha for the partial taking of land upon which a trailer court was located.

On appeal, this eminent domain proceeding initially was heard by the Appellate Division of the District Court. We affirmed the jury verdict of the district court for Douglas County. See *Lantis v. City of Omaha*, 235 Neb. xvii (case No. 87-1090, May 18, 1990). Subsequently, this court granted a rehearing. Following the rehearing, we again affirm the verdict of the district court.

Throughout the appeal to this court, the appellants have specifically assigned as error the trial court's failure to (1) admit the testimony of the landowners' valuation witness, (2) instruct the jury on the "before and after" measure of just compensation in a case of a partial taking, and (3) give the landowners' requested instruction No. 12.

The trailer court involved in this lawsuit, Garden Valley Trailer Court, owned by the Lantises, is located on 7.78 acres of improved real estate located at approximately 16th and Jaynes Streets in Omaha. The mobile home park is bisected into a

north and a south parcel by a tract of land owned by a third party. Both parcels of the mobile home park, prior to condemnation, contained improved trailer lots, consisting of concrete pads with utility hookups for gas, water, sewer, electric, and telephone services for each mobile home. Before the eminent domain proceedings, there existed 122 to 129 usable mobile home sites at the park. The City of Omaha condemned approximately 47 feet of the north portion of the trailer court for construction of the Storz Expressway. This partial taking eliminated 15 of the mobile home spaces and rendered 4 other spaces useless because they then were so situated that a mobile home could not be pulled in and out of each of those 4 spaces. The City of Omaha also obtained a 16,878.9-square-foot construction easement for a 1-year period from the trailer court and took 11,700 square feet of concrete and 510 feet of chain link fence.

During the course of the trial, the appellants offered testimony of George McCabe, Ph.D., a professor of finance at the University of Nebraska-Lincoln, as to the appellants' "just compensation." Through a motion in limine, the City of Omaha objected to the use of Dr. McCabe's testimony, his report entitled "Value of Garden Valley Trailer Court," and his estimate of the reduction in value of the trailer court. The City of Omaha claimed that McCabe utilized an inappropriate method in arriving at damages in this eminent domain case.

Outside the presence of the jury, the trial court permitted the appellee to conduct a voir dire examination of McCabe. At the conclusion of the examination, McCabe's testimony was the subject of an offer of proof by the appellants, to which testimony the appellee objected. The trial court sustained the City of Omaha's motion in limine and objection. Appellants, in their first assignment of error, claim that the trial court's rejection of McCabe's testimony was erroneous.

The condemnees called only McCabe as an expert witness. McCabe testified that he was not a licensed real estate appraiser in Nebraska, that he did not hold himself out as an expert in the appraisal of real estate, that he had never before appraised a trailer court, and that he made no independent study on his own to verify or study any market sales. At the trial court level, the

City of Omaha questioned whether McCabe was qualified to testify as an expert witness in an eminent domain proceeding. The condemner did not preserve that issue for appellate review, and we therefore make no determination in regard to that matter. The record reflects that McCabe valued the Lantis trailer court as an ongoing business both before and after the taking and determined the difference between the two to be the condemnees' just compensation.

There are basically two means by which just compensation in partial takings is determined. 7A Nichols, The Law of Eminent Domain § 12.02 (rev. 3d ed. 1990). Under one method the value of the entire tract is found just prior to the taking, the value of the remaining tract is evaluated after the taking, and the difference of these two quantities gives the compensation. *Id.* The appellants acknowledge that McCabe used this method to determine just compensation and in so doing valued the trailer court as an "ongoing concern." Using this "before and after" valuation of an ongoing concern, McCabe found the appellants' just compensation to be $121,736.

The second means by which just compensation in partial takings is determined involves determining the market value of the land taken and then measuring the difference in value of the remainder before and after the taking. *Id.* This is the measure of compensation used for partial takings of land in eminent domain proceedings in this state. "The measure of compensation for land taken for public use is the fair and reasonable market value of the land actually appropriated and *the difference in the fair and reasonable market value of the remainder of the land before and after the taking.*" (Emphasis supplied.) *Harmony Lanes v. State,* 193 Neb. 826, 830, 229 N.W.2d 203, 206 (1975). Accord, *Verzani v. State,* 188 Neb. 162, 195 N.W.2d 762 (1972); *Berlowitz v. State,* 180 Neb. 164, 141 N.W.2d 764 (1966); *Chaloupka v. State,* 176 Neb. 746, 127 N.W.2d 291 (1964).

McCabe did not purport to testify as to the value of the real estate actually taken, nor did he purport to testify as to the difference in the fair and reasonable market value of the remainder of the land before and after the taking. This deficiency in and of itself was sufficient reason for the trial

court's refusal to permit McCabe to testify as to the compensation to which the appellants were entitled.

In sustaining the condemner's objection to McCabe's testimony, the trial court declared: "There's no question in my mind that the witness, George McCabe, Ph.D., is incorporating into his computations regarding the fair market value of this property future and anticipated profits. In so doing, he's in contravention of Nebraska law as I understand it." The trial court's perception that McCabe utilized profits in determining appellants' just compensation is conceded in appellants' brief: "To allow capitalization of income, but not capitalization of profits, is to swallow the camel and then strain at the gnat." Brief for appellants at 28. In *Y Motel, Inc. v. State*, 193 Neb. 526, 227 N.W.2d 869 (1975), we held that gross rentals may be admissible to allow a jury to gauge comparability of sales relied upon for comparison and, upon proper foundation, that gross rental may be received as an item to which prospective buyers give substantial consideration. We also held in *Y Motel* that in an eminent domain proceeding, anticipated profits from the continued carrying on of a business in an established location cannot be considered in estimating damages due a landowner and that the profits of a business cannot be shown for the purpose of proving the value of the property. Accord *Verzani v. State, supra*.

A trial court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Fuglsang v. Blue Cross*, 235 Neb. 552, 456 N.W.2d 281 (1990); *Aetna Cas. & Surety Co. v. Nielsen*, 222 Neb. 92, 382 N.W.2d 328 (1986); *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985). In this case there was no abuse of discretion. To the contrary, it would have been an abuse of discretion to admit in evidence McCabe's testimony, since he used the wrong measure of damages. Because McCabe used the wrong measure of damages in formulating what he determined to be just compensation in this case, his testimony would not assist the jury either in understanding the evidence or in determining a fact in issue and, therefore, was not relevant. See Neb. Rev. Stat. § 27-702 (Reissue 1989). Evidence which is not relevant is not admissible.

Neb. Rev. Stat. § 27-402 (Reissue 1989).

Appellants' second and third assignments of error can be considered together. The appellants' assigned errors claim that the trial court failed to give their requested instruction No. 12 and that the instructions given were not proper. After a careful review of the instructions given, we find they are an accurate and proper statement of the law. All the jury instructions given must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Denesia v. St. Elizabeth Comm. Health Ctr.*, 235 Neb. 151, 454 N.W.2d 294 (1990). In this case, the trial court submitted the usual standard eminent domain instructions, which clearly stated the proper measure of damages in a partial taking case such as this. Instruction No. 12 offered by the appellants embraced the same improper measure of damages contained in McCabe's proffered testimony. Therefore, appellants' requested instruction No. 12 was properly refused.

In its brief, the appellee purports to cross-appeal, and in its assignment of error claims the trial court erred "in denying Appellee's motion nunc pro tunc for an order requiring the condemnees to return damages awarded them for the acquisition of Tract No. 46A to the County Court." Appellee did not argue this assignment of error. Errors assigned but not discussed will not be considered by this court. *Horst v. Johnson, ante* p. 155, 465 N.W.2d 461 (1991).

We dismiss appellee's cross-appeal and affirm the judgment of the district court.

AFFIRMED. CROSS-APPEAL DISMISSED.

WHITE, J., dissenting.

The previous decisions of this court holding that profits obtained from the operation of a business on the premises are inadmissible in an eminent domain action are justified only when the activity involves a business venture whose success is unrelated to the physical location and condition of the business premises. A successful freight company whose profits are largely derived from cartage agreements negotiated by mail or telephone could not demonstrate a rational relationship

between profit and value of the real estate.

However, when the gross income largely arises from the physical use of the premises themselves, the amount of the gross rental is admissible. *Y Motel, Inc. v. State*, 193 Neb. 526, 227 N.W.2d 869 (1975).

I find no meaningful distinction between space rental at a trailer court and room rental at a motel. Obviously, the gross rental value of the trailer lots was admissible and the expert could base his opinion on that gross rental. See *Y Motel, supra*.

To suggest, as we have in previous cases, that profit is not an item considered by a prospective buyer of real estate is obviously an invented concept. Indeed, it seems logical that a prospective buyer would acquire all information available and give such weight as the information deserved. It is my view that the gross profit of the operation of the trailer court was admissible and that the amount of the profit may be used as the basis for an opinion of value. See 4 Nichols, The Law of Eminent Domain § 12B.09[1] (rev. 3d ed. 1990).

I would reverse.

GRANT, J., joins in this dissent.