## KNOXVILLE HOUSING AUTHORITY, INC. v. GERSON A. BUSH et al.—408 S.W.(2d) 407.

Eastern Section. March 29, 1966.

Certiorari Denied by Supreme Court, September 19, 1966.

Poore, Cox, Baker & McAuley, Knoxville, for plaintiff-in-error, Knoxville Housing Authority, Inc.

R. C. Smith, Jr., and Earl S. Ailor, Knoxville, for defendant-in-error, Gerson A. Bush, and others.

COOPER, J. The Knoxville Housing Authority, Inc. brought this suit to condemn land in the 10th Ward of the City of Knoxville included in "The Urban Renewal Plan" adopted by the Knoxville City Council on May 21, 1963. The land in question was owned by Gerson Bush and had been improved by an apartment building.

On April 20, 1962, approximately two years before the condemnation suit, Mr. Bush borrowed $116,700.00 from the Northwestern Mutual Life Insurance Company, executing a promissory note and a trust deed on the property in question as security for payment. The note, in addition to providing for regular monthly payments of interest and principal, permitted Mr. Bush to pay an additional sum on the principal indebtedness not exceeding $11,670.00 in any one year for a period of 5 years and, thereafter, to pay the entire remaining balance due on the mortgage, provided he paid a prepayment penalty or fee of four (4%) of the balance due.

Gerson Bush made monthly payments on the note in accordance with its terms until June 1, 1964, at which time the Knoxville Housing Authority, Inc. became the vested owner of the property in question by reason of their Declaration of Taking in this cause.

The Northwestern Mutual Life Insurance Company filed an answer and cross-petition in this cause seeking payment of the full indebtedness and the prepayment penalty out of funds deposited in Court by the Housing Authority on commencement of the suit.

Upon application of Gerson A. Bush, and by agreement of the parties, the funds in the Registry of the Court were disbursed, with $112,216.49 being paid to Northwestern Mutual Life Insurance Company. This sum included a prepayment fee or penalty "of $4,295.37 as reflected in the Trust Deed of said Northwestern Mutual Life Insurance Company." The agreed order went on to provide, however, that "the withdrawal and distribution of the foregoing sums shall be made without prejudice

to the rights of either party to contest the issue of ultimate compensation in further proceedings herein.''

The stipulation of the parties filed in lieu of a bill of exceptions discloses that ''when the matter was presented on the trial of the case, it was agreed that the prepayment penalty was paid as a result of the taking of the property by the Housing Authority, but it was the position of the counsel for the Housing Authority that the requirement for the penalty being paid result from the contract made between the owner of the property and the Northwestern Mutual Life Insurance Company, whereas, it was the position of the counsel for the property owner, Gerson Bush, that the prepayment penalty was not brought about by any voluntary act on his part, but was forced upon him because of the condemnation of the property, and therefore, he was entitled to be recompensed in the condemnation proceedings for the same.''

Upon trial of the cause, the court directed the jury to return a verdict for $4295.37 as compensation for damages incurred by reason of the prepayment penalty or fee, and for the sum of $1350.00, the stipulated moving expense to which the property owner was entitled. In addition, the jury returned a verdict for $284,000.00 as the fair cash market value of the property condemned. The Knoxville Housing Authority, Inc. appealed.

On appeal, the single question presented is whether a mortgage prepayment penalty is an element of damage to be considered by the trier of fact in awarding a judgment for incidental damages in a condemnation proceeding.

Where private property is taken for a public purpose under the law of eminent domain, the condemn-

ing authority is required to pay the owner "just compensation" for the property taken (Art. 1, Sec. 21 of the Constitution of the State of Tennessee and Article 5 of the Constitution of the United States), and such incidental damages as are provided by statute. Lenzi v. Union Station Co., 3 Tenn.Civ.App. (3 Higgins) 218; Wray v. Knoxville, etc. Railroad, 113 Tenn. 544, 82 S.W. 471.

"It will be noted that just compensation for property taken is provided for by Constitution. Incidental benefits and damages are creatures of statute, and are in addition to the compensation provided by the Constitution, and separate from it. (citing several cases)." Wray v. Knoxville, supra at page 551, 82 S.W. at page 473.

The legislature of this State, in T.C.A. 23-1414, sets forth the "elements" to be considered by the trier of fact in estimating damages to be awarded in eminent domain proceedings, as follows:

"In estimating the damages, the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages. Where the removal of furniture, household belongings, fixtures, equipment or machinery is made necessary by the taking, the reasonable expense of such removal shall be considered in assessing incidental damages. * * *."

As pointed out by the Court in Lewisburg & N. R. Railroad Co. v. Hinds, 134 Tenn. 293, at page 311, 183 S.W. 985, at pages 989-990, L.R.A.1916E, 420, "[t]he word 'damages' here used does not mean a sum of money, exacted by retributive justice for a legal injury inflicted, but purchase money for property taken, pur-

suant to law, for the use of a public improvement, and compensation for the loss in value *incidentally imposed upon the residue of the tract* as a consequence of the taking of a part'' (emphasis supplied)

In the case of Lenzi v. Union Station Company, 3 Tenn. Civ.App. (3 Higgins) 218, which was decided prior to the time the legislature specifically provided that moving expenses were to be classed as incidental damages, the court pointed out that:

''It has been ruled by our Supreme Court in a number of cases that the *incidental benefits and incidental damages referred to in the statute, relate to that portion of the land remaining to the land owner after a portion has been taken for the public improvement*. The incidental benefits to the remaining portion are such as have enhanced its value. In other words, the increased facilities in travel or trade, or the location of a depot or town on the portion taken, etc., are to be taken into consideration as incidental benefits. Incidental damages are such as result from the necessity for new fences and walls, the removal of outbuildings or the inconvenience occasioned the land owner in the enjoyment of the remainder of his land. We think, by no sort of construction, can the incidental damages allowed by our statute embrace the costs of the removal of personal property from the premises taken for the public improvement, or the depreciation of its value by reason of the removal * * *'' (emphasis supplied)

The Lenzi Case, supra, is also authority for the proposition that loss of business is not an item of damages for which the condemnee can recover in absence of statute. In this regard, the Court states that:

"Any incidental loss or inconvenience in business which may result from a removal or change consequent upon the taking, must be borne by the owner for the sake of the general good in which he participates."

The holding by the Court on this point is in accord with the position taken by the Courts of our sister states. See 18 Am.Jur., Eminent Domain. "Injury to Business and Loss of Profits," Sec. 259, p. 899. See also, Sec. 261, p. 902, where it is pointed out that "it is uniformly held that the loss or diminution of the good will of a business, caused by the condemnation of the land on which the business is located is not an element of damages or compensation."

From the above authorities, it is evident that all pecuniary losses suffered by a landowner as the result of an eminent domain proceeding are not compensable, but only those damages which are embraced within the eminent domain statutes. These damages, as shown above, are those relating to the part of the land remaining to a landowner after a part of his land has been taken for a public improvement, and the reasonable expense of removing furniture, household belongings, fixtures, equipment or machinery made necessary by the taking of the property, as defined in T.C.A. 23-1414 above. A mortgage prepayment penalty does not fit either category, and therefore cannot be recovered.

Counsel for the defendant Gerson Bush has cited us to the case of Rex v. Macpherson, 15 Can.Exch. 215, wherein the court, without discussion, held that "where there is a mortgage upon property in which the mortgagor stipulates for a bonus to be paid him in case the principal is sought to be paid before the mortgage falls due, the Crown expropriating before that event must assume the

payment of such bonus in addition to paying the value of the property taken.''

■ We can not accept this case as authority for the allowance of recovery of a prepayment penalty as an element of incidental damages in an eminent domain proceeding. The appellate courts of this state have held consistently that incidental damages are a creature of statute and can be awarded only where the pecuniary injury to the condemnee is embraced within the legislative enactments. The question in this case, and one which was not present in the Canadian case cited above, is whether prepayment penalties paid by the mortgagor of land taken in an eminent domain proceeding are embraced within the provisions of T.C.A. 23-1414, set out above, as defined and limited by the decisions of the courts of this state. As heretofore stated, we are of the opinion they are not.

In conclusion, we have considered this case in the light of the stipulation filed in lieu of the bill of exceptions voicing the theory on which the parties proceed to trial in the trial court, that is, that the landowner was required to pay the prepayment penalty to the mortgagee as the result of the eminent domain proceeding. However, by doing so, we are not evidencing approval of the position that where property subject to a mortgage is taken in an eminent domain proceeding, a prepayment penalty provision would be effective as between the mortgagor and the mortgagee. See generally Shavers v. Duval County, Fla., 73 So.2d 684. We are holding only that a prepayment penalty paid by the mortgagor, whether voluntarily or in compliance with a contract between the mortgagor and the mortgagee, is not an element of incidental damage that has been recognized and provided for

by our legislature and that the condemnor is not liable to the mortgagor in damages for such payment.

The judgment of the trial court will be reduced by $4,295.37, the amount awarded as damages for the prepayment penalty, and as reduced will be affirmed. Costs incident to the appeal are adjudged against Gerson Bush.

McAmis, P. J., and Parrott, J., concur.