## THOMPSON BROTHERS INVESTMENT CO., Plaintiff in Error, v. STATE OF TENNESSEE ex rel. David M. Pack, Commissioner of Highways, Defendant in Error. —444 S.W.2d 180.

Western Section.  November 22, 1968.

Certiorari Denied by Supreme Court April 21, 1969.

John S. Porter and David E. Caywood, Memphis, for plaintiff in error; Burch, Porter & Johnson, Memphis, of counsel.

George F. McCanless, Attorney General, William E. Brooks, Assistant Attorney General, Hanover, Hanover, Walsh & Barnes, Memphis, for defendant in error.

BEJACH, J.  This cause involves an appeal in error by Thompson Brothers Investment Company from a judgment or decree of the Circuit Court of Shelby County in a condemnation suit which awarded to plaintiff in error $30,289.30 for property taken but no incidental damages for property not taken, and required plaintiff in error to refund $3,135.70, with interest at the rate of 6 per cent annum from December 13, 1966. In this opinion, the parties will be referred to, according to their status in the lower court, as plaintiff and defendant, or called by their respective names, the plaintiff being sometimes referred to as the State, and the defendant as the landowner.

This was a condemnation suit filed by the State of Tennessee on the relation of David M. Pack, Commissioner of Highways, against Thompson Brothers Investment Company for the purpose of acquiring a part of the property owned by defendant at the corner of Waldran Blvd. and Autumn Ave., Memphis, Tennessee. Suit was filed November 21, 1966. John Lee, Treasurer of the City of Memphis, and Riley C. Garner, County Trustee of Shelby County, were made defendants, along with

Thompson Brothers Investment Company, but neither John Lee nor Riley Garner are involved in the appeal. The State paid into court, along with its petition for condemnation, the sum of $32,423. The verdict of the jury and judgment of the court being less than the amount paid into court with the condemnation petition accounts for the judgment or decree against the landowner in the sum of $2,135.70.

Thompson Brothers Investment Company purchased the entire tract of land in 1947. They operated on it an ice plant and coal business until 1958, when the business was sold to Railway Ice Company. The sale to Railway Ice Company did not, however, include the ice manufacturing plant or the machinery with which it was equipped. Under the sale contract, Thompson Brothers Investment Company was, however, prohibited from manufacturing ice, and no ice has been manufactured there since 1959. Defendant did operate an ice vending machine on that part of the property not taken, which ice vending machine was still in operation at the time the suit was filed and at the time of the trial. The ice sold in the vending machine was purchased from Railway Ice Company. No business was conducted on the premises after 1959 except the operation of the ice vending machine. Thirty thousand and eighty two (30,082) square feet of defendant's land was taken, on which was located several old buildings and two wells which had formerly been used in connection with the manufacture of ice. Defendant's property before the taking extended from Waldran Blvd. to Lewis Street. All of the frontage on Lewis Street was taken, but only a small part of the frontage on Waldran Blvd., leaving defendant's property reduced both in size and in shape. None of the ice making machinery or equipment was

taken, same having been left in the same situation and condition that it was in since the ice plant was sold in 1959. One of the controversies of this law suit is over the ruling by the trial judge that defendant was not entitled to recover for moving expenses of this machinery. There was also some controversy over whether or not the ice machinery had deteriorated since 1948, but in support of its contention that it had deteriorated, counsel for the State quote from the testimony of Mr. Vance Maynard Thompson, one of Thompson Brothers, and consequently one of the owners of the property, as follows:

"Q. How much have you all spent on the upkeep of that machinery in the last five years?

A. I couldn't give you that figure, but it hasn't been a big amount. As I have told you, we had covered the electric motors to keep the moisture out of them. We put some treatment in the brine. I think in 1959 and 1960, we have spent some money on labor to turn the machines by hand to keep the rings from sticking in the cylinders. I would say most of the money had been spent trying to keep the roof from leaking. I would say we spent, from '58 up until the time of the taking, probably in the neighborhood of $500; not more than that, mainly on patching the roof. In the latter years, the roof finally gave way and has some gapping (sic) holes in it."

As stated above, the only material conflict in the proof is over the value of the property taken, and as to whether or not there were incidental damages to that part of the property not taken. The proof with reference to these matters was as follows:

"LANDOWNERS' WITNESSES

| Witness | Taking | Incidental Damages |
|---|---|---|
| D. T. Kimbrough | $91,962.00 | $4,611.00 |
|  | (R. p. 88) | (R. p. 88) |
| Ripley Greer | $60,000.00 | $25,000.00 |
|  | (R. p. 131) | $30,000.00 (R. p. 131) |
| Fred H. Thompson | $69,751.00 | $13,836.00 (Bldgs.) |
|  | (R. p. 154) | $15,200.00 (Land) |

STATE'S WITNESSES

| Herman Gruber | $30,115.72 | None |
|---|---|---|
|  | (R. p. 184) | (R. p. 185) |
| William King | $28,810.00 | (None) |
|  | (R. p. 221) | (R. p. 221) |

JURY VERDICT: $30,289.30
No Incidental Damages

---

After the jury returned its verdict, which was approved by the trial judge, the landowner filed a motion for new trial, which was overruled. Defendant then perfected its appeal in the nature of a writ of error.

In this Court, as plaintiff in error, defendant has filed two assignments of error which are as follows:

## "I.

The trial court erred in holding as a matter of law that the defendants could not recover moving expenses when the competent material evidence showed that the taking necessitated the moving of the machinery from the premises and that the property remaining after the taking was wholly inadequate for the operation of an ice plant.

## II.

The trial court erred in not granting a new trial because (1) there was no evidence to support the jury verdict that there were no incidental damages to that portion of the property remaining after the taking and (2) for the additional reason that the verdict of the jury to the effect that there were no incidental damages to that portion of the property remaining after the taking is not supported by any evidence.''

By Assignment of Error I, defendant complains of the refusal by the Court to allow any recovery for moving the ice machinery from that part of the defendant's property not taken. In disposing of this assignment of error, we point out that defendant's right to recover for moving expenses, if any such expenses are recoverable, is under the provisions of section 23-1414 T.C.A., which is as follows:

''23-1414 *Elements of damages.*—In estimating the damages, the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages. Where the removal of furniture, household belongings, fixtures, equipment, machinery, or stock in trade is made necessary by the taking, the reasonable expense of such removal shall be considered in assessing incidental damages. The reasonable expense of the removal of such chattels shall be construed as including the cost of: any necessary disconnection, dismantling or disassembling, the loading, and drayage to another location not more than ten (10) miles distant, and the reassembling, reconnecting and installing in such new location.''

Under the above quoted statute, it will be noted that the removal expenses are recoverable only where such expenses are, *"made necessary by the taking."* It is obvious in the instant case that the taking of part of the property, on which part the ice machinery in question was not located, did not *make necessary* the removal of the ice machinery from that part of the property not taken. The ice machinery in question had been there, unmoved since 1958, and Mr. Vance Maynard Thompson testified that his family had no intention of moving the ice machinery in question except for the purpose of sale. He also testified that in 1959 defendant had been furnished an acquisition plat, which showed exactly which part of the property here involved was to be taken, which was the part actually taken in this condemnation suit; yet, in spite of this information, no removal of the machinery had been made. Obviously a sale of the machinery can be made from where it is now (undisturbed by the condemnation proceeding), just as well as could be made from any other location within ten miles of its present location. In spite of information of the taking furnished to defendant in 1959, it had not moved the machinery up to now and there is no good reason for assuming or adjudicating that the taking involved in the instant case has made necessary its removal within any foreseeable future.

In the case of Lenzi v. Union Station Co. (1913), 3 Tenn.Civ.App. 218, which case was decided before the eminent domain statute was amended so as to authorize compensation for removal made necessary by the taking, the Court of Civil Appeals held that no compensation could be allowed for removal expenses. Since the eminent domain statute has been so amended, in the recent case

of Knoxville Housing Authority v. Bush (1966), 56 Tenn. App. 464, 408 S.W.2d 407, this Court, Eastern Section, held that section 23-1414 T.C.A. quoted above, does not authorize recovery by a landowner of a prepayment penalty on a mortgage, made necessary by the condemnation. In arriving at that conclusion, the Court, speaking through Judge Cooper, said:

"From the above authorities, it is evident that all pecuniary losses suffered by a landowner as the result of an eminent domain proceeding are not compensable, but only those damages which are embraced within the eminent domain statutes. These damages, as shown above, are those relating to the part of the land remaining to a landowner after a part of his land has been taken for a public improvement, and the reasonable expense of removing furniture, household belongings, fixtures, equipment or machinery made necessary by the taking of the property, as defined in T.C.A. 23-1414 above. A mortgage prepayment penalty does not fit either category, and therefore cannot be recovered." Knoxville Housing Authority, Inc. v. Bush, 56 Tenn.App. 464, 408 S.W.2d 410.

In our opinion, the moving expenses claimed by Thompson Brothers Investment Co., in the instant case, are not included under the provisions of section 23-1414 T.C.A., and were properly disallowed by the trial judge.

Counsel for defendant cite and rely on a Nebraska case, Bickels v. State of Nebraska Dept. of Roads (1965), 178 Neb. 825, 135 N.W.2d 872. There are enough Tennessee cases on the subject, however, to control our decision, and we, therefore, consider it unnecessary to follow authorities from other jurisdictions on the question here in-

volved. In any event, the Nebraska eminent domain statute, like the Tennessee statute, authorizes compensation for moving expenses only where the taking has made moving necessary. In the instant case the taking of part of defendant's property has not made necessary the moving of the ice making machinery from that part of the land not taken. Assignment of Error I is accordingly overruled.

By Assignment of Error II, defendant complains because the jury allowed no incidental damages. Evidently the jury believed the witnesses offered by the State, and did not believe the witnesses offered by the landowner. As pointed out above, Mr. Herman Gruber, one of the witnesses for the State, testified that the damages from the taking of defendant's property was $30,-115.72, with no incidental damages. The jury's verdict was almost exactly for the amounts of Mr. Gruber's testimony. For the landowner, on the other hand, Mr. D. T. Kimbrough testified that the damages for taking were $91,962, with $4,611 for incidental damages. Mr. Ripley Greer testified that the damages for taking were $60,000, with $25,000 to $30,000 incidental damages; and Mr. Fred H. Thompson testified that the damages for taking were $69,751, with $13,836 to $15,200 for incidental damages. Aside from the wide discrepancy as to incidental damages, even among defendant's own witnesses, there are several reasons why the jury might have given (as it apparently did), more weight to the testimony of the State's witnesses than they did to that of the landowner's witnesses. Among these are the fact that neither of the landowner's witnesses made any written report of his appraisal, whereas the State's witnesses did make a written report or reports of their appraisals. Also it appears

that two of the landowner's witnesses were related by blood to the owners of the land, Mr. Greer being the uncle of the Thompson Brothers, and Mr. Fred H. Thompson, a cousin; and even Mr. D. T. Kimbrough, though not related, was associated in business with Mr. Greer. Another reason is that the jury may have been impressed by Mr. Gruber's extensive experience in handling industrial property. He testified that he had sold, within the last year or two, more than $2,000,000 worth of that type of property, whereas, witnesses for the defendant admitted that they had sold a comparatively small amount of that type of property.

Counsel for defendant lay great stress on their contention that access to the remaining part of defendant's property on Autumn Avenue was seriously impaired, and that even the State's witnesses admit that it would cost about $400.00 to build a ramp to make access possible. They contend, therefore, that, with such testimony in the Record, the trial judge should have granted a new trial. In view of the fact that the jury returned a verdict for more than $30,000, we feel constrained to hold that an item of $400.00 may be considered within the legal maxim *de minimis non curat lex*. The trial judge saw and heard the witnesses and he approved the verdict of the jury. We are of opinion that his judgment and that of the jury should be affirmed. Assignment of Error II, as well as Assignment of Error I will be overruled.

The costs of the cause will be adjudged against the appellant and the surety on the appeal bond.

Carney and Matherne, JJ., concur.