IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2002 Session

## THE TOWN OF COLLIERVILLE, TENNESSEE
v.
## NORFOLK SOUTHERN RAILWAY COMPANY, JANE PORTER FEILD and JOEL H. PORTER, and SCHILLING, INC.

Appeal from the Circuit Court for Shelby County
No. 84435-1 T.D.     John R. McCarroll, Jr., Judge

---

### No. W2001-02391-COA-R3-CV - Filed April 22, 2003

---

This is a condemnation case on appeal for the second time. At three places at which roads were to cross over an existing railroad track, the town filed a petition to condemn property in which the railroad owned a right-of-way, in order to build railroad crossings. The trial court initially found that the railroad could not challenge the town's right to take the property and granted the town's motion for the writs of possession. The railroad appealed for the first time. In the first appeal, this Court reversed the trial court and found that the railroad was entitled to a hearing to determine whether the railroad crossings would materially impair or interfere with the railroad's prior use of the rights-of-way. On remand, the trial court found that they would not, thus concluding that the town had the right to condemn the property. The trial court then considered the damages for the condemnation. The railroad sought incidental damages related to its depreciation costs, as well as costs for its increased exposure to liability because of the additional crossings. The trial court determined that the railroad, as a matter of law, could not recover depreciation costs, and also held that the railroad failed to produce proof to support an award of damages for increased liability exposure. The railroad appeals. We affirm, finding that the railroad can recover neither depreciation costs nor damages for increased exposure to liability from the additional crossings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Ralph T. Gibson, Memphis, Tennessee, for appellant, Norfolk Southern Railway Company.

Robert A. McLean and Georgia A. Robinette, Memphis, Tennessee, for appellee, Town of Collierville, Tennessee.

John McQuiston, II, Memphis, Tennessee, for appellee, Schilling, Inc.

Joel H. Porter, Memphis, Tennessee, for appellees, Joel H. Porter and Jane Porter Feild.

**OPINION**

This is the second appeal in these consolidated cases. Schilling, Inc., and Jane Porter Field and Joel H. Porter (collectively "Developers") are the fee owners of two separate tracts of land in Collierville, Tennessee.[1] Norfolk Southern Railway Company ("Norfolk") has a right-of-way over the properties for a railroad track through the town of Collierville. At three places at which roads would cross the railroad track, the Town of Collierville ("Collierville"), at the request of the Developers, sought to install state-of-the-art railroad crossings. Toward that end, Collierville filed three petitions of condemnation against Norfolk in order to construct the crossings.[2] Collierville then moved for a writ of possession in each case. In each instance, the trial court found that Collierville had a right to take the property, and granted the writ of possession. These judgments were made final so that the issues might be appealed. Prior to the first appeal, all three cases were consolidated, then one of the three cases was settled.

The first appeal centered on whether Norfolk was entitled to an evidentiary hearing regarding Collierville's right to take the property. *Town of Collierville, Tenn. v. Norfolk S. Ry. Co.*, 1 S.W.3d 68, 71 (Tenn. Ct. App. 1998). The Court determined on appeal that Collierville could condemn the easements "unless such condemnation will destroy, render very difficult, or materially impair or interfere with Norfolk Southern's prior use of the right-of-way." *Id.* (citing *City of Memphis v. S. Ry. Co.*, 67 S.W.2d 552, 553 (Tenn. 1934)). Thus, the cause was remanded to the trial court for a hearing on this issue. *Id.* at 73-74.

On remand, an evidentiary hearing was held, and the trial court found that the crossings would not be so hazardous as to materially impair or interfere with Norfolk's prior use of the rights-of-way. Thus, the trial court determined that Collierville was entitled to take the land in question and the proceedings moved to the damages phase.

Collierville next filed a motion *in limine*, objecting to Norfolk presenting evidence of its increased exposure to liability as a result of the additional crossings, as well as evidence of the cost of installing the traffic control devices for the two remaining crossings. The trial court granted the motion in part, holding that Norfolk would not be permitted to present proof on the cost of the traffic control devices. The trial court reserved its ruling on the motion with respect to evidence of increased exposure to liability. The trial court stated that it would determine whether Norfolk was entitled to damages for increased exposure to liability under *West Virginia Board of Regents v. Fairmont Morgantown Pittsburgh Railroad Co.*, 250 S.E.2d 139 (W. Va. 1978).

In *West Virginia Board of Regents*, the plaintiff sought to condemn an aerial easement above a railroad surface right-of-way in order to build an elevated rapid transit system. *W. Va. Bd. of*

---

[1]Schilling, Inc. owns one tract of land, and Jane Porter Feild and Joel H. Porter own the other tract.

[2]For procedural reasons the petitions joined the Developers as co-defendants with Norfolk.

***Regents***, 250 S.E.2d at 141. The aerial easement was approximately four-fifths of a mile long, and ran above the railroad right-of-way. ***Id.*** The Supreme Court of Appeals of West Virginia noted that the case involved "the taking of an easement by another public utility for the purpose of constructing a parallel facility." ***Id.*** at 142. A West Virginia statute provided for compensation for such a parallel easement. ***Id.*** at 142-43 (citing W. Va. Code § 54-1-9 (1971)).[3] Regarding increased liability based on the parallel easement, the West Virginia court stated:

> [T]he railroads may introduce into evidence the actual cost of their increased insurance premiums attributable to the risk along this four-fifths mile of track. However, they must demonstrate that the limits of coverage are those which a reasonably prudent railroad would secure, as opposed to the most desirable possible limits of coverage, and that the premiums for such coverage are what would be charged routinely in the market place by insurance carriers regularly engaged in the business of insuring railroad operations, to a railroad of the size of the appellant railroads, *as an additional or marginal premium* in excess of the premiums which are already being paid for the overall insurance of the railroads' operations. If the railroads are self-insurers, then the measure would be the difference between what the most economical, reliable insurer would charge to insure the railroads' operation as currently constituted plus the increased liability for the section of track under the [rapid transit system], less the amount that they would charge for the railroads' operations as currently constituted.

***Id.*** at 146. Thus, the ***West Virginia Board of Regents*** court held that, under West Virginia statutory law and caselaw, when a portion of a railroad's right-of-way is condemned for a parallel utility, the owner of the right-of-way may recover incidental damages in the form of increased insurance liability costs. These damages would be measured by the difference between the overall cost of insuring the railroad without the condemnation for the parallel utility, and the overall cost of insuring the railroad after the condemnation. ***Id.*** In the case at bar, the trial court indicated to the parties that

---

[3]The court in ***West Virginia Board of Regents*** quotes section 54-1-9 of the West Virginia Code:

> If any such company, private corporation, public corporation, West Virginia department of highways or county court desire that the course of any other railroad, canal, sewer line, pipeline, state, or other public road, telephone or telegraph line, electric transmission line, or any stream which is not a public highway, be altered to avoid the necessity of any crossing, or of frequent crossings, or to facilitate the crossing thereof, *or the construction of a parallel work*, the alteration may be made in such manner as may be agreed between the said party desiring such alteration and the owner of such other facility or land to be affected thereby. In case the parties interested fail to agree upon such crossing or alteration as is desired, said party desiring such crossing or alteration may bring a civil action, and in such action the court may, in a proper case, order that any proper crossing, or alteration, may be made upon payment of just compensation for the property or interest in property to be taken and upon payment of damages, if any, to the residue thereof beyond all benefits to be derived thereby.

***W. Va. Bd. of Regents***, 250 S.E.2d at 142-43 (quoting W. Va. Code § 54-1-9 (1971)) (emphasis added).

the standard in *West Virginia Board of Regents* would be used to determine whether Norfolk could recover damages for increased exposure to liability.

At the hearing, Collierville and the Developers again objected to Norfolk's presentation of evidence with regard to increased liability exposure, as well as Norfolk's presentation of proof of the cost of depreciation as a result of the installation of the crossings. The trial court decided to conduct a hearing outside the presence of the jury, in order for Norfolk to present proof on claims for both increased liability exposure and depreciation, i.e. decrease, in its operating revenue.

At the hearing on these issues, Norfolk presented seven experts. An expert on railroad right-of-way valuation testified that the cost of operating the two crossings over a twenty-five year period would be $1,908,952. Insurance experts, an expert actuary, and an economics professor testified that insurance over a twenty-five year period for the two crossings alone would be $5,637,206 for the first five million dollars in coverage, and $3,699,750 for coverage over five million dollars. On cross-examination, one expert said it would be highly unusual to insure only specific crossings, and, in most cases, cost prohibitive to do so. The same expert also stated that there would be no increase in the overall premium cost to insure the entire railroad simply because two crossings were added. Also on cross-examination, another of Norfolk's expert witnesses testified that he had never heard of singling out two crossings and writing a separate insurance policy for them.

At the conclusion of the hearing, the trial court found that, as a matter of law, Norfolk could not recover its depreciation costs from the two crossings. On the issue of Norfolk's increased exposure to liability, the trial court determined that Norfolk failed to present sufficient proof under the standard adopted in *West Virginia Board of Regents*.[4] Norfolk now appeals.

On appeal, Norfolk argues that it is entitled to recover damages for depreciation costs, that is, the diminution in its operating revenues, and increased potential liability costs with regard to the

---

[4] Regarding the increased liability exposure, in its Order on Motion In Limine and Final Judgment, the trial court held:

> 4. In the testimony proffered on Monday, July 9, 2001, all of the Railroad's experts focused only on the cost to insure the . . . crossings separately and apart from all of the Railroad's crossings together, and no expert offered testimony as to the difference between the cost to the Railroad to insure all its crossings including the two crossings at issue, and the cost to the Railroad to insure all of its crossings as presently constituted, without these two crossings;

> 5. As to self-insurors, no Railroad expert offered proof as to what would be the difference between what the most economical, reliable insuror would charge to insure the Railroad's operation as currently constituted, plus the increased liability for the two new crossings . . . less the amount they would charge for the Railroad's operation as presently constituted.

> 6. Accordingly, the Railroad has failed its burden to meet the standard of *West Virginia Board of Regents* and has failed procedurally to establish the increased risk that the Railroad as a self-insuror would bear. . . .

two new railroad crossings, and thus, should have been permitted to present this evidence to the jury. These issues involve only questions of law; therefore, the decision of the trial court is reviewed *de novo*, with no presumption of correctness. **King v. Pope**, 91 S.W.3d 314, 318 (Tenn. 2001) (citations omitted).

Norfolk first argues that it is entitled to depreciation costs as incidental damages from the additional two crossings. At the pre-trial hearing, Norfolk adduced expert testimony estimating that the cost of maintaining the signal equipment, controlling vegetation, paying damages for some crossing accidents, and making railway repairs would total approximately $115,959 per year for each crossing. An expert actuary projected that the total cost over twenty-five years would be $1,908,952. The trial court held that: "On the question of depreciation, a separate issue, the Railroad's claim for depreciation of its business is not related to its real estate, does not come within the peculiar value exception, and therefore is not a proper element of damage."

Norfolk argues that Tennessee's caselaw[5] supports its claim for depreciation costs. Norfolk cites **Lewisburg & N.R. Co. v. Hinds**, 183 S.W. 985 (Tenn. 1916), in which a railroad condemned a right-of-way through a farm. The railroad attempted to limit its liability to the landowner. The Tennessee Supreme Court held that the railroad was responsible not only for the value of the land actually taken, but also for the diminution in the value of the remainder of the farm because of the railroad's presence on the property, sometimes referred to as the "depreciation" in value of the remainder of the land. *See id.* at 992.

Under Tennessee law, incidental damages attendant to condemnation are authorized by statute. **Knoxville Hous. Auth., Inc. v. Bush**, 408 S.W.2d 407, 409 (Tenn. 1966) (citing **Wray v. Knoxville, Lafollette & Jellico R.R.**, 82 S.W. 471, 473 (Tenn. 1904)). Section 29-17-810 of the Tennessee Code Annotated provides:

> In all instances the amount to which an owner is entitled shall be determined by ascertaining the fair cash market value of the property or property rights taken and adding to the same the amount of *incidental damage done to the residue of the owner's property*, if any, after deducting from the incidental damages to the residue the value of all special benefits, if any, occasioned such residue by the construction of such street, road, highway, levee, ditch, drain, watercourse improvement (when such levee, ditch, drain, or watercourse improvement is condemned pursuant to § 29-17-801(a)(2)), freeway or parkway including, but not limited to, increased accessibility to the owner's property, greater convenience in the approach with

---

[5]Norfolk also cites the Kentucky decision of **R.J. Corman Railroad Co./Memphis Line v. Commonwealth of Kentucky**, 2001 WL 1590272 (Ky. Ct. App. Dec. 14, 2001). The **Corman** Opinion, however, begins with the following: "THIS OPINION IS NOT FINAL AND SHALL NOT BE CITED AS AUTHORITY IN ANY COURTS OF THE COMMONWEALTH OF KENTUCKY." We also note that the Kentucky Supreme Court has granted review of this case. *See **R.J. Corman R.R. Co. /Memphis Line v. Commonwealth of Kentucky***, 2001 WL 1590272, Direct History. Consequently, we do not address the applicability of **Corman.**

vehicles, the advantages generally of a front on a more desirable roadway, better drainage, or increased attractiveness.

Tenn. Code Ann. § 29-17-810 (2000) (emphasis added). Thus, a landowner is entitled to incidental damages only as they relate to the residue of the *property*. **Hinds**, cited by Norfolk, is consistent with this. **See Hinds**, 183 S.W. at 991 (". . . the question is, what is the market value of the land without, and what is the market value of the remainder of the piece with, the railroad?" (quoting Sutherland on Damages, Vol. 4, § 1065)).

Indeed, railroad companies such as Norfolk have historically been required to absorb the rising cost of operating as the land through which its tracks run becomes increasingly developed. This has been true for many years:

> Under modern conditions railway companies are pioneers in development. Railroads are constructed usually in advance of the public ways and improvements made necessary by subsequent settlements. The railroad is thus first constructed making provision for existing land and waterways, but without reference to subsequent improvements. By such construction natural conditions are changed. Solid embankments may be erected across low lands, or deep cuts made through higher lands. But it is now clearly established in this state, as in most states, that the company so builds its road subject to the reserved right of the public to lay out highways, locate drains, establish or improve water ways across the company's right of way when the necessity therefor arises. For the property taken in making such improvements compensation must be made, but for the incidental expense in making reasonable changes in the method of carrying its tracks over such improvements, when public safety, health, convenience, or welfare require such change, no compensation can be claimed by the railway. Such change is required under the reserved or police power of the state.

*Nashville, C. & St. L. Ry v. Middle Fork Obion Drainage Dist. No. 6, Weakley County*, 261 S.W. 975, 979 (Tenn. 1924) (quoting with approval **Chicago, M. & St. P. Ry. Co. v. Minneapolis**, 133 N.W. 169, 174 (Minn. 1911)). An award of damages for the diminution in value of the railroad's right-of-way is consistent with established caselaw. An award of damages for the railroad's increased operating costs as a result of development along its tracks, as is here sought by Norfolk, is contrary to established Tennessee caselaw.

At the hearing, Norfolk's expert testified with regard to the diminished value of the *company* because of the monies it must expend on the new crossings. This testimony did not address the diminished value of the *land* because of the crossings, but rather expenses to the company such as track and signal maintenance, vegetation control, and payment of damages for crossing accidents. Since Norfolk may recover incidental damages only for the decreased value of the residue of the right-of-way, and not for the increased operating cost to the company, this evidence does not establish Norfolk's right to damages. *See* Tenn. Code Ann. § 29-17-810, *Lewisburg & N.R. Co. v.*

*Hinds*, 183 S.W. 985, 992 (Tenn. 1916); *see also Memphis v. Hood*, 345 S.W.2d 887 (Tenn. 1961); *Sadler v. State*, 56 S.W.3d 508 (Tenn. Ct. App. 2001); *Tate v. Monroe County*, 578 S.W.2d 642 (Tenn. Ct. App. 1978). Therefore, in this instance, the trial court did not err in denying Norfolk relief on the issue of depreciation costs incident to the condemnation.

Norfolk next argues that the trial court erred in finding that it was not entitled to compensation for increased liability exposure. In ruling on Collierville's initial motion *in limine*, the trial court adopted the standard set forth in *West Virginia Board of Regents v. Fairmont Morgantown Pittsburgh Railroad Co.*, 250 S.E.2d 139 (W. Va. 1978). The trial court noted that the facts of *West Virginia Board of Regents* were "quite different" from the facts in this case, but stated that "the measure of damages as set forth . . . in *West Virginia Board of Regents* may be considered by this court."

The situation addressed by the West Virginia court, however, differs greatly from the facts in the case at bar. The case was decided pursuant to a specific West Virginia statute providing for compensation to a railroad in the event of construction of a parallel utility. Therefore, *West Virginia Board of Regents* is simply inapplicable to this case, and insofar as the trial court adopted the standard in that case, we must conclude that this was error.

Nevertheless, the result reached by the trial court, denial of Norfolk's claim for the cost of increased exposure to liability, is not in error. Under Tennessee law, the railroad is liable for the cost of maintaining the railroad crossings. *See* Tenn. Code Ann. § 65-11-101 (Supp. 2002); *Chicago, Burlington & Quincy Ry. Co. v. Chicago*, 166 U.S. 226, 251-52 (1897); *S. Ry. Co. v. Maples*, 296 S.W.2d 870, 872 (Tenn. 1956); *City of Chattanooga v. S. Ry. Co.*, 161 S.W. 1000, 1002-03 (Tenn. 1913); *Chesapeake, O. & S. W. R. Co. v. Dyer County*, 11 S.W. 943, 944-45 (Tenn. 1889); 21 Tenn. Juris., *Railroads*, § 21 (2000). Norfolk cites to no Tennessee statute or caselaw requiring damages for increased liability costs under the circumstances of this case.

Therefore, the trial court's decision denying Norfolk's claim for incidental damages due to increased operating costs to the railroad company, as well as incidental damages with regard to increased insurance liability, is affirmed.

The decision of the trial court is affirmed. Costs are taxed to appellant, Norfolk Southern Railway Company, and its surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE